United States v. Truitt is our fifth case for the day. Good morning, Your Honors, and may it please the Court. As the Court knows, this is an appeal about the exclusion of a defense expert below. The expert was excluded on a few different grounds, but if it's all right with the Court, I'm going to start with the District Court's finding that the expert's methodology was not reliable, because I think I have the most to say on that. The District Court criticized the defense expert, his methodology for not relying on sufficient data, and... Before you get to that, Counsel, I had a really difficult time actually pinning down what the expert's opinion was going to be. It was kind of a moving target, and when it was excluded initially, then there was a supplement, and it was restated in order to try to cure the problems with the original opinion, which were numerous, but fundamentally that the opinion was forbidden under Rule 704B, because it was an opinion about the mens rea in the case, which is prohibited in a criminal case. But even the supplement was a bit hard to pin down exactly what the expert's opinion was going to be. So perhaps in just a couple of sentences you could summarize it. Sure. So the expert was going to testify that the temple that Ms. Truitt belonged to was a charismatic group, and secondly, the expert was going to testify that in general, the psychological forces within such group can have powerful effects on people within the group, and that was an effort to cure the Rule 704B problem of the initial opinion. How is Part B of that opinion not in contradiction to, or in conflict with Rule 704B? It's just, it seems to me, a rephrasing of the original opinion. So the second opinion does not, the expert would not have testified specifically that Ms. Truitt fell under that spell? What's the point of describing the spell if not to give a basis for an argument in closing that she fell under the spell? So I think that it would give a basis for an argument in closing. However, I think it would not offend Rule 704B to present an expert opinion that would allow the jury to draw inferences about Ms. Truitt's mens rea and draw inferences about the ultimate question, which is whether or not she truly believed that the doctrine that was presented in this temple was real. I don't think that the government raised the issue, either below or here, that that second opinion would offend Rule 704B. Obviously, Your Honor is free to bring up issues as you see fit. However, I would argue that that argument has been waived or forfeited by the government. Have I answered your question? Well, I think so. The district judge excluded the rephrased opinion based on unreliable methodology, but initially based on lack of qualifications to give it, because this expert, Dr. Fogel, wasn't in fact an expert in charismatic groups. He just did a little homework on that in the second round opinion. So that's correct. I think as I read the court's opinion, he excluded the second opinions we submitted based on what he found to be a lack of qualifications and unreliable methodology, as well as 403. Just to address qualifications for a bit, I think the court conflated a lack of specialization with a lack of expertise. Something we tried to present, and I think that we did present below, was that the study of charismatic groups is rooted within the broader field of psychology. And that is something that Dr. Fogel possessed sufficient qualifications on. As he explained at the Daubert hearing, forensic psychologists are tasked with helping determine why a person behaves the way that they do. It's called a functional analysis. And so his job as a forensic psychologist, which he has been performing for well over a decade, necessarily includes the study of these sort of external forces that he identified in relation to his opinions on charismatic groups. And so while he doesn't have a specialization in cults or charismatic groups under this circuit's case law, that lack of specialization doesn't exclude him as unqualified because that area of psychology is something that he is, if you want to call him a generalist forensic psychologist, would have expertise to opine on. Moreover, and this is more factual, he did have experience specifically with charismatic groups. He did talk about his specific experience regarding social psychology and group dynamics. And I think in light of that experience and in light of this circuit's case law, if the government wished to argue he had a lack of specialization, I think that would go to the weight of the opinion and not the admissibility of the opinion. Turning back to methodology, experts can extrapolate from existing data, and that's precisely what Dr. Fogel did in this case. There was never a criticism that there was too great of an analytical gap between the data and studies he looked at and the temple in this case. And his methodology was akin to a differential diagnosis, and that's essentially what a functional analysis is in psychology. And there's a number of cases cited in my brief that show that a differential diagnosis satisfies Dobbert so long as reliable methods are used. But you said he wasn't diagnosing her in the second opinion. Differential diagnosis is plaintiff-specific in a personal injury case. That's where we usually see it. In this case, if he was offering a defendant-specific diagnosis, that runs into Rule 704B. He ultimately came to the conclusion that these forces caused her to commit this offense. Yeah, but that opinion is inadmissible. Understood, Judge. And that's why we changed his opinions or walked them back a bit to allow him to testify about some of the conclusions he reached leading up to that opinion. Right, but to the extent that it's an expert opinion about this temple, the only person he interviewed is the defendant herself. It's correct that he only interviewed Ms. Truitt herself. However, he relied on a number of other documents produced by temple members as well as hundreds of pages of discovery that were supplied by the government. Those included reports of interviews, tax records with these idiosyncratic Moorish temple markings on them, documents from the Cook County Recorder of Deeds. And so while the interview, the only person he interviewed was Ms. Truitt, he didn't just rely on her word in reaching his opinions. I see I'm running into my rebuttal time. I'd like to save a minute. Certainly, counsel. Ms. Greenwald. Good morning. The district court did not abuse its discretion by excluding Dr. Fogel's testimony. The defendant failed to carry her burden of establishing that Dr. Fogel possessed the requisite expertise and the methodology that Dr. Fogel applied was reliable. And the court further properly exercised its discretion by excluding the testimony under Federal Rule of Evidence 703. Oh, sorry, 403. On the issue of expertise, this court has explained that the question is not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for him to answer a specific question. And here, as defense counsel just told the court, the first question that this witness was going to answer or testify about was that the Moorish temple was a charismatic group. And in that testimony, he wasn't testifying on a differential diagnosis of the defendant. He was testifying about a sociological or almost anthropological issue that this Moorish temple was a Moorish group. And as the district court determined, nothing in Dr. Fogel's training, membership, work experience, or publications established him as an expert on the characteristics and the qualities of a charismatic group and the determination that a particular group was a charismatic group. And the defendant argues he had experience in social psychology and the influence external factors can have on an individual. But again, as Dr. Fogel himself relied on Dr. Gallanter, who was an expert on the characteristics of charismatic groups, and Dr. Gallanter himself has written that the methodologies used in the study of charismatic groups are rooted not only in social psychology, but in psychiatry, anthropology, sociology, none of which does his resume suggest in any way. Sounds like professional jealousy. I think so. But in any event, he wasn't testifying within his area of expertise. In terms of the methodology, again, he wasn't diagnosing this defendant, and he wasn't providing a differential diagnosis. He was testifying that this particular group was a charismatic group, but yet he did not apply the methodology that the experts in that particular field applied. This court and the Supreme Court has said that we expect the same rigor in the courtroom from an expert's analysis as he would apply in the field. The field here was a study of charismatic groups. The methodology there was that all it shows on the record as to what that methodology is is the methodology of Dr. Gallanter, which involved numerous interviews. Yes, Judge Sykes, you look like you want to ask a question. He's borrowing from other experts. This is his first foray into this field. It is. He had one case. I believe the defense by mistake refers to two cases, maybe some confusion in the record. But my reading of the record is he had one case some years ago that he could not pull out a date on. He doesn't say it involved charismatic groups or that he had to study some group. It was more some kind of religious thing involving some kind of sexual abuse of a minor. He describes that case that he can't give a date for and that he doesn't suggest he did any study of a group in connection with. Yes, the government, as the district court found and did not abuse its discretion in finding, that this witness did not have the necessary expertise and did not,  was not in a position to create a methodology totally different from the one that's used in that field and used by the very expert he relied on. As far as, but it went even further, if he couldn't even establish that, if he didn't have the expertise and he didn't have the reliable methodology to even say that this temple was a charismatic group, you don't even get to a second conclusion, which I agree with you, Judge Sykes, was always a bit nebulous and not clear, but as described now, can have powerful effects on individuals. Hearing that articulated that way now raises questions as to its very relevance because obviously what effect was that on this individual? Because if it wasn't an effect where it made her believe that things that weren't true were true, it really doesn't go to her specific intent to be lying on these particular forms, which is all that was her mental state that was an issue here. But in any event, as to that very conclusion, not only was he not an expert on this area, but he offered nothing, as the district court pointed out, nothing in the record, before the judge ruled on this, before trial, to even support that conclusion, and particularly a conclusion that it could lead her to believe things that weren't true to be true, so that she... Well, that's a break with reality. That's an insanity defense. This needle is very hard to thread in a case like this. But in any event, again, we would say there's no methodology to support any such conclusion in this record, and there's no expertise backing that up. And I would just add one other thing. The defendant's position has always been that the discovery supported the defendant's, that there was no need to do further interviews or further development of an understanding of this group because you had her portrayal of it, and then all of this discovery. But nothing in the record shows that any of the information of this discovery came anywhere near the kind of observations Dr. Gallanter would develop about a group or the kind of interview questions and investigation that he embarked in. All, I think, is a suggestion here, or Fogle's suggestion, was that the information corroborated her story. And there's nothing to suggest that that is the kind of methodology required in terms of this area of expertise. So unless the court has any further questions... It doesn't look like it. Thank you, Ms. Greenwood. I would ask that the court affirm the conviction and sentence based on this. Anything further, Ms. Wood? I'll round your 44 seconds up to a whole minute. Just briefly, Your Honors. Nothing in Daubert or its progeny requires experts to recreate field experiments of others. And while it does require experts to use reliable methodology, that methodology can include extrapolating from existing data and reliance on the studies and literature of other experts. And it can also include reliance on a defendant's self-report, which Dr. Fogle did in this case. Regarding the government's discussion about the discovery material and whether that was sufficient or was similar to methodology used by other experts, it provided a view into a temple, which is the type of methodology used by the experts that Dr. Fogle cited in his studies. Thank you, Ms. Wood. Thank you. And Ms. Wood, we appreciate your willingness to accept the appointment in this case and your assistance to the court in both your clients. The case is taken under advisement.